**COX et ux. v. CITY OF FORT WORTH.**
No. 13495.

Court of Civil Appeals of Texas.
Fort Worth.
Jan. 29, 1937.

Rehearing Denied March 5, 1937.

Houtchens & Houtchens and J. Harold Craik, all of Fort Worth, for appellants.

R. E. Rouer, Geo. C. Kemble, J. M. Floyd, and R. B. Young, Jr., all of Fort Worth, for appellee.

DUNKLIN, Chief Justice.

This is a condemnation proceeding instituted by the City of Fort Worth to condemn for highway purposes a strip of land 10 feet wide and 75 feet in length off of the west ends of lot 1 and the north one-half of lot 2, block 73, Fostepco Heights Addition to the City of Fort Worth. Those lots were in an outlying addition to the city and were 125 feet deep from west to east, but at the east end the two lots narrowed to a width of 65 feet.

The application for condemnation was filed in the county court, and the defendants named were J. H. Cox and the Mutual Home Association, upon allegation that the two defendants owned or claimed some interest in the property. The judge of the county court appointed John Champ, John Roberts, and John McEntire special commissioners to assess the value of the strip to be so taken and also damages to the remainder of the two lots.

The two defendants were duly cited to answer the application for condemnation and were served with due notice of a hearing by the commissioners, and upon such hearing awarded damages in the sum of $210, payable to the defendant J. H. Cox to cover all damages resulting from said condemnation. No damages were awarded to the

Mutual Home Association, who failed to appear at the hearing and wholly made default.

The award of the commissioners was filed with the clerk of the county court on February 25, 1935. Thereafter J. H. Cox and wife, Willie E. Cox, filed in the county court their original answer to the application for condemnation, reciting the award made by the commissioners and their objections thereto for inadequacy of the damages sustained, in that, as the result of the condemnation of the 10-foot strip desired by the city, it will become necessary for the defendants to remove from the remaining portion of the property several pumps, three 550-gallon tanks, certain pipe lines, dwelling house, and other improvements. Later, the defendants filed their amended original answer and cross-action, elaborating the allegations in the original answer.

Plaintiff, the City of Fort Worth, then filed its supplemental petition in reply to the amended answer.

On January 20, 1936, the case was tried before a jury and upon their findings the court rendered judgment in favor of plaintiff for title and possession of the 10-foot strip mentioned above and in favor of defendants J. H. Cox and wife, Willie E. Cox, against the city for the sum of $300, with interest thereon from February 23, 1935, and all costs of suit, as full compensation for the market value of that strip and for damages to the remainder of said lots and improvements thereon, resulting from the taking of the 10-foot strip. The judgment further recites that the amount so awarded would cover all damages resulting from lowering the grade of the street abutting the property. There was a further decree that the Mutual Home Association recover nothing, and that plaintiff's recovery of the 10-foot strip should be free and clear of any claim, lien, or interest of that defendant. The judgment further recites that the Mutual Home Association, though duly served with notice, failed to appear and answer.

Following are special issues submitted with instruction by the court in connection therewith, and the findings of the jury, which were returned into court and upon which the judgment rendered was based:

"No. 1. What was the reasonable cash market value of the strip or parcel of land ten feet wide off of the west ends of Lot 1 and the north one-half of Lot 2, Block 73, Fostepco Heights Addition to the City of Fort Worth, Tarrant County, Texas, for public highway purposes, immediately prior to and at the time of such condemnation, considered as a part and parcel of the remaining land of the defendants, of which said ten foot wide strip of land formed a part?

"Answer: $300.00.

"In this connection you are instructed that by market value, as used in the foregoing issue, and such other issues as may be submitted to you, is meant its value for which it was used when condemned, or its value for any other purposes, if any, for which it was adapted, and is the price it will bring in cash when offered for sale by one who desires to sell, but is not obliged to do so, and is sought by one who desires to buy, but is under no necessity of having it, taking into consideration a reasonable length of time for the sale of the same.

"In arriving at the market value of the land mentioned in the above question you will leave out of consideration the new and improved highway and any fact pertaining thereto.

"No. 2. Has the market value of the remaining property owned by the defendants, J. H. Cox and wife, and not actually condemned for public highway purposes been diminished, increased or neither diminished, nor increased by the condemnation of the ten foot strip, and by its employment for public highway purposes?

"Answer by 'diminished,' 'increased,' or 'neither,' as you find the facts to be.

"Answer: Increased.

"You are instructed that the house and outhouses and other improvements upon the remaining portion of defendants' land is a part of the realty and may be considered by you in arriving at the reasonable cash market value of the said remaining portion of the defendants' land.

"No. 3. If you have answered question No. 2 'increased,' or 'neither,' then do not answer this question, but if you have answered question No. 2 'diminished,' you will answer this question:

"Question: To what extent was the cash market value of the remaining land of the defendants J. H. Cox and wife and not actually condemned, diminished, if any, by the condemnation of the ten foot strip of land in question, and by its employment for

public highway purposes? Answer in dollars and cents.

"Answer: ———

"In this connection you are instructed that diminution in value, if any, would be the difference, if any, in the reasonable market value of such land not taken by the City of Fort Worth, immediately prior to and at the time of the taking for public highway purposes and the reasonable market value thereof, after such condemnation and its employment for public highway purposes.

"In determining the decrease, if any, in the market value of said remaining portion of land, after the condemnation and appropriation of the strip in question, you will take into consideration the purposes for which said property was adapted, as a whole, before such appropriation of said strip of land was made, and the purposes to which the remaining portion may be adapted, after such condemnation, and the effects, if any, such condemnation and appropriation of the strip in question will have upon the improvements located on the remaining portion, in view of the purposes and uses to which such improvements are, and may be adapted. You will also consider, in arriving at your said answer, any special increase, or decrease, in the market value, if any, alone, to said remaining portion of said land, resulting from such appropriation of said strip of land and the purpose for which the same was condemned, but you will not consider any increase, or decrease, in the market value of said remaining land, if any, that is enjoyed or suffered by the community generally, resulting from the improvements made to said highway and street in question."

From that judgment the defendants J. H. Cox and wife appealed.

J. H. Cox and wife, who are the only defendants referred to in subsequent portions of this opinion, appeared and took part in the trial of the case and failed to except to any of the issues submitted or to the instructions given by the court in relation thereto. But error has been assigned to the refusal of a purported requested issue shown in a bill of exception appearing in the transcript. The bill of exception reads as follows:

"Be it remembered that upon the trial of the above styled and numbered cause, the following proceedings were had.

"After the court had prepared his charge to be submitted to the jury, and before the same was submitted to the jury, and in timely time, the counsel for defendants prepared and presented to the court the following requested charge, and requested the court to submit the same to the jury, towit:

"'You are instructed that in arriving at your verdict in this case, that the buildings and improvements upon the remaining portion of defendants' land in question is a part of the realty, and may be considered by you as such, in arriving at the reasonable cash market value of the remaining portion of defendants' land, and in arriving at your answer to special issue No. 3, you will take into consideration such costs and expenses, if any, as you may find from the evidence will be reasonable and necessarily incurred and expended, and relocating defendants' buildings and pumps, and such work as you may find from a preponderance of the evidence defendants will necessarily be required to do, in order to relocate and place the same in the same or similar condition as before the taking of the lands in question by plaintiff, City of Fort Worth.'

"And the Court, after considering the same, overruled the motion and request of defendants herein to submit the foregoing charge to the jury, and refused to submit the same to the jury, as a part of his main charge, and thereupon and in open court defendants then and there excepted, and here now pray the court to approve and order filed this their Bill of Exception to the Court's action in so refusing to submit to the jury said charge, and order the same filed as a part of the record in this cause, this 7th day of March, 1936."

That bill of exception was filed March 7, 1936, which was some 46 days after the trial of the case and some 36 days after the defendants' motion for new trial had been overruled and their exception taken thereto and notice of appeal given; the order overruling the motion reciting that defendants would be allowed 50 days in which to file bills of exception and a statement of facts.

There is no showing in the bill of exception that the purported requested issue had any file mark thereon or notation of its refusal by the trial judge.

Article 2185, Rev.Civ.Statutes, reads in part, as follows: "The charge shall be in writing, signed by the judge, filed with the clerk, and shall be a part of the record of

the cause. It shall be prepared after the evidence has been concluded and shall be submitted to the respective parties or their attorneys for inspection, and a reasonable time given them in which to examine and present objections thereto, which objections shall in every instance be presented to the court before the charge is read .to the jury, and all objections not so made and presented shall be considered as waived."

Article 2186: "Either party may present to the judge such written instructions as he desires to be given to the jury; and the judge may give such instructions, or a part thereof, or he may refuse to give them, as he may see proper. Such instructions shall be prepared and presented to the court and submitted to opposing counsel for examination and objection within a reasonable time after the charge is given to the parties or their attorneys for examination."

Article 2188: "When a special instruction is requested and the provisions of the law have been complied with and the·trial judge refuses the same, he shall indorse thereon 'Refused,' and sign the same officially. If the trial judge modify a special charge, he shall endorse thereon 'Modified as follows: (stating in what particular he has .modified the charge) and given, and exception allowed' and sign the same officially. Such refused or modified charge when so indorsed shall constitute a bill of exceptions and it shall be conclusively presumed that the party asking said charge presented the same at the proper time, excepted to its refusal or modification, and that all the requirements of law have been observed, and the same shall entitle the party requesting such charge to have the action of the trial judge in refusing or modifying the same reviewed without preparing a formal bill of exceptions."

Rule 54, for the government of district and county courts, reads as follows: "The charges of the court that are given, and those asked that are refused, when signed by the judge and filed by the clerk, being made thereby a part of the record by statute, shall not, in civil causes, be made a part of a bill of exceptions."

█ In the absence of any showing that the requested charge was indorsed by the judge "refused" and then filed with the papers in the case, there is no basis for any presumption that the same was ever submitted to opposing counsel for their examination or of defendant's exception to its refusal. For such a showing, we must look entirely to the bill of exception, which contains no recital that the requested issue was ever submitted to opposing counsel. Under such circumstances, we think it may be well doubted that the presentation and refusal of the purported requested issue is properly shown in the record entitling appellants to a consideration of its merits.

█ However, a definite determination of that question is not necessary for the following reasons: First, the requested instruction embodied a charge on the weight of the evidence in assuming as a fact that a removal and relocation of the defendants' buildings and pumps will necessarily be required as the ·result of the proposed condemnation; testimony offered by plaintiff being sufficient to negative such requirement. Second, under the court's instructions, in determining whether or not the market value of the remainder of the property not condemned was diminished by the taking of the strip in question, the jury was authorized to take into consideration the testimony set out in appellants' brief to show the necessity for the removal of the improvements on that portion of the property not condemned, and it cannot be presumed that the jury did not take those facts into consideration in passing upon that issue. And appellants' failure to object to that issue and the instructions in connection therewith was a waiver of the right to have the same facts again presented in the requested issue; thus giving undue emphasis to that claim, and tending to confuse the jury. State v. Carpenter, 126 Tex. 604, 89 S.W.(2d) 194, 979; Parker County v. Jackson, 5 Tex.Civ.App. 36, 23 S.W. 924; City of Rosebud v. Vitek (Tex. Civ.App.) 210 S.W. 728; Wise County v. McClain (Tex.Civ.App.) 100 S.W. 802.

Assignments of error are presented complaining of improper argument to the jury by counsel for plaintiff, to none of which did the defendants except during the hearing of the case, but it is insisted that the same were so prejudicial and inflammatory as to require a reversal of the judgment under the doctrine announced in Willis & Brothers v. McNeill, 57 Tex. 465; Floyd v. Fidelity Union Casualty Co. (Tex.Com. App.) 24 S.W.(2d) 363; Kress & Co. v. Lindley (Tex.Civ.App.) 46 S.W.(2d) 379; and other decisions there cited.

We deem it sufficient to say that we have carefully considered the statements of plaintiff's counsel, of which complaint is made, and have concluded that they were

508

not subject to the objections now urged in the assignment of error thereto, in view of the trial court's explanations of the connection in which they were made and facts shown in the record here.

■ The arguments were not of such character that any possible injury therefrom could not have been removed by an instruction from the court, if the court's attention had been called thereto at the time; and appellants' failure to urge such objection at that time was a waiver of the right to complain of the same here for the first time. Robbins v. Wynne (Tex. Com.App.) 44 S.W.(2d) 946; Gulf, C. & S. F. Ry. Co. v. Carson (Tex.Civ.App.) 63 S.W.(2d) 1096; Texas Employers' Ins. Ass'n v. Ray (Tex.Civ.App.) 68 S.W.(2d) 290 (writ refused); 41 Tex.Jur. § 87, p. 820, and decisions cited.

■ It is insisted that there is no evidence in the record to support a finding of the jury that that portion of defendants' lots not taken was increased by the condemnation proceedings, and that at all events such finding was contrary to the great preponderance of the evidence. To the contrary, that finding of the jury was in accord with the testimony of different disinterested witnesses, and the fact that there was other testimony to the contrary does not authorize us to overturn the verdict and, accordingly, these assignments of error are overruled.

■ By another assignment it is insisted by appellants J. H. Cox and wife that there is fundamental error in the judgment denying relief to the Mutual Home Association, a lienholder on the property, since that association was a necessary party to the suit, because the report of the commissioners was filed with the county clerk instead of with the county judge, as required by article 3265, subd. 5, Rev.Civ. Statutes. It is insisted that in the absence of a filing of the report of the commissioners with the county judge, the court was without jurisdiction to render a default judgment against the association, and that that error required a reversal of the judgment in its entirety. It is conceded in appellants' brief that the association, although duly served with notice and citation, failed to appear before the commissioners appointed by the court to assess the damages and also failed to appear upon the trial of the case. And it is to be noted further that the association has not prosecuted any appeal from the judgment rendered against

it. We fail to perceive any merit in this assignment. The failure of the association to pay any attention to any of the proceedings taken, together with its failure to perfect any appeal, indicates that it is satisfied with the judgment rendered, and since it is satisfied, we fail to perceive how the appellants can complain, especially since the entire award of damages was decreed to them, untrammeled by any lien thereon in favor of the association. Fort Worth & D. S. P. Ry. Co. v. Judd (Tex.Civ.App.) 4 S.W.(2d) 1032; State v. Carpenter (Tex. Civ.App.) 55 S.W.(2d) 219; 3 Tex.Jur. § 728, pp. 1026, 1027; Vey v. City of Fort Worth (Tex.Civ.App.) 81 S.W.(2d) 228.

All assignments of error are overruled, and the judgment of the trial court is affirmed.